UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X
                                   :
FRED CHARLEMAGNE,
                                   :
            Petitioner,
                                   :    05 Civ. 9890 (DAB)(HBP)
      -against-
                                   :    REPORT AND
GLEN S. GOORD, Commissioner and         RECOMMENDATION
BRIAN FISHER, Superintendent       :

                                   :
            Respondents.
                                   :
----------------------------------X


            PITMAN, United States Magistrate Judge:


            TO THE HONORABLE DEBORAH A. BATTS, United States

District Judge,


I.  Introduction


            Petitioner Fred Charlemagne seeks, by his pro se

petition for a writ of habeas corpus pursuant to 28 U.S.C.

§ 2254, an Order vacating the sentence and judgment of conviction

imposed on June 15, 2001 after a jury trial, by the Supreme Court

of the State of New York, New York County (Sudolnik, J.), for one

count of burglary in the second degree and one count of posses-

sion of burglar's tools, in violation of New York Penal Law

Sections 140.25(2) and 140.35, respectively.  As a result of that

conviction, petitioner was adjudicated as a persistent violent

felony offender and sentenced to concurrent terms of imprisonment

of seventeen years to life on the burglary charge and one year on the possession-of-burglar's-tools charge. Petitioner is currently incarcerated pursuant to that judgment.

For the reasons set forth below, I respectfully recommend that the petition be denied in its entirety.

II. <u>Facts</u>

A. Facts Underlying
   <u>Petitioner's Conviction</u>

At approximately 1:20 p.m. on Friday, November 3, 2000, Jeannie Liou and her boyfriend, David Chen, returned to Liou's studio apartment on the fifth floor of a six-story walk-up building on East 82nd Street in Manhattan (Tr.[1] 241-45, 247, 280, 283, 296-97, 332). Liou could not insert her key into the door lock because a piece in the cylinder area had been removed (Tr. 248-51, 283, 299, 303, 333). When Liou left the apartment the previous day, the lock had been in working condition (Tr. 291). After knocking on the door, Liou and Chen heard someone lock the door from inside the apartment (Tr. 248, 299-300). They then heard footsteps and a window "slam" (Tr. 259). One of the windows in Liou's apartment opened onto a fire escape leading to the sidewalk (Tr. 260-61).

---

[1] "Tr." refers to the transcript of petitioner's trial.

While Liou called the police on her cell phone from the hallway, Chen ran downstairs and called 911 from his cell phone (Tr. 248-49, 254, 261, 284-85, 299-300, 325, 334). As Chen ran to the front of the apartment building, he saw petitioner and Jared Padilla running down the fire escape (Tr. 300, 308-09). His attention was caught by a silver cell phone one of the men was using because it was a phone Chen recognized from a prior job he had with a telephone company (Tr. 308-09, 317-18). When petitioner and Padilla reached the sidewalk, Chen was only three or four feet away and had an "excellent" view of their profiles (Tr. 307-08, 341). Chen saw that petitioner was Hispanic, had a moustache, and wore blue jeans, a black jacket, and a hat (Tr. 308, 311, 313-17, 335-36).

As petitioner and Padilla quickly walked away from the building, Chen followed them from a distance of about twenty paces and contemporaneously described what he was observing to a 911 operator (Tr. 300, 308, 320, 323, 338-39). Chen saw the men get into a taxicab at York Avenue and 81st Street and told the 911 operator that its medallion number was 3014 (Tr. 300-02, 320-21, 323). The cab remained at the intersection for about fifteen or twenty seconds before it turned onto 81st Street and Chen lost sight of it (Tr. 301, 323). About one to three minutes had elapsed from the time Chen saw petitioner on the fire escape until the time he lost sight of the cab (Tr. 324, 339, 343-44).

Chen's attention was focused on petitioner this entire time (Tr. 324-25).

While the foregoing events were occurring, Detective Thomas Mays was on plainclothes patrol in a taxicab with Sergeant Rippe and Police Officer Oldack (Tr. 351-52, 354-55, 379). The officers received a radio transmission that a burglary had occurred and that two perpetrators had fled the scene in a cab bearing medallion number 3014 (Tr. 356). The officers went to First Avenue and 94th Street to look for the cab identified in the radio transmission (Tr. 357). Shortly thereafter, Detective Mays saw a cab with a medallion of 3D14 with two occupants in the back seat (Tr. 358). Mays believed this to be the cab identified in the radio call and believed and that the person who gave the description had mistaken the capital letter "D" for the number zero (Tr. 357-58, 361).[2]

Since they were in a taxicab, the officers asked for assistance from a marked unit, which directed the cab to stop (Tr. 358-59). With the cab pulled over, Detective Mays, Officer Oldack, and the other two officers from the marked car removed petitioner and Padilla from the taxi and handcuffed them (Tr. 355, 362-64).

---

[2]Evidence was offered at trial that no two cabs have the same medallion number and that each medallion number consists of one number followed by a capital letter and then two numbers (Tr. 409).

A police car driven by Police Offer John Hubbert then brought Liou and Chen to the location of the stopped cab for a show-up identification (Tr. 302, 329, 342, 362). From about twenty to thirty feet away and while still in the backseat of the car, Chen identified petitioner and Padilla as the men he had scene running down the fire escape (Tr. 344-47). Chen was "[v]ery confident" about his identification of the men because of their clothes and because one of them had the same cell phone that had previously caught Chen's attention (Tr. 310, 330-31). When Chen made this identification, two or three uniformed and about three plainclothes officers were standing near petitioner and Padilla (Tr. 344-46). Chen also noticed that the two men were not wearing hats; in response to a request from Chen, an officer put a hat on petitioner (Tr. 329-30, 347). Chen then confirmed his identification of petitioner (Tr. 330).

After petitioner and Padilla were placed under arrest, Detective Mays recovered a pouch containing various tools from the floor of the cab on the side where petitioner had been seated (Tr. 364-65, 374-78). The pouch held a pair of locking pliers, which had been filed down to create a hook at the end, a file, needle-nosed pliers, two screwdrivers, and a large wood toothpick (Tr. 377, 388, 393). In addition, two cards of hard cardboard or plastic, known as "shims," were recovered from petitioner's back pocket, and three shims were recovered from a chain around

5

petitioner's neck (Tr. 392-94). The pouch did not belong to the cab driver, and he did not know if it was in the cab prior to petitioner and Padilla's getting in (Tr. 364, 465, 467). Petitioner and Padilla denied that the pouch belonged to them (Tr. 365).

Later that day, Liou entered her apartment and discovered that numerous items had been moved (Tr. 251-52, 285). Initially, Liou thought that her laptop computer, mini-disk player, camera, radio, and jewelry box with its contents were missing, but she later found these items on her futon sofa inside a duffle bag that had been stored in her kitchen (Tr. 252-53, 255-67, 285-87, 290-91). Liou did not know petitioner or Padilla and had not authorized either man to enter her apartment (Tr. 280-82).

B.  The Suppression Hearing

On April 12, 2001, petitioner moved to suppress, inter alia, Chen's show-up identification of him on the ground that the show-up procedure was unduly suggestive. The Honorable James Yates, Justice of the Supreme Court of the State of New York, denied petitioner's motion, holding that the procedure used was

"not unnecessarily suggestive" based on its temporal and geo-graphic proximity to the crime and its necessity (H.[3] 55).

## C.  Petitioner's Trial

On May 16, 2001, petitioner proceeded to trial before the Honorable Joan Sudolnik, Justice of the Supreme Court of the State of New York, and a jury.  The prosecution established the facts set forth above; the defense presented no evidence.  The jury subsequently returned verdicts of guilty on the charges of burglary in the second degree and possession of burglar's tools (Tr. 567-70).

Thereafter, petitioner was adjudicated a persistent violent felony offender and sentenced to concurrent terms of imprisonment of seventeen years to life on the burglary charge and one year on the possession of burglar's tools charge (S.[4] 5-13, 24-25).

## D.  Post-Conviction Proceedings

Petitioner appealed his conviction to the Appellate Division, First Department, of the New York State Supreme Court. Petitioner's initial appellate brief, prepared by counsel, argued

---

[3]"H." refers to the transcript of petitioner's suppression hearing.

[4]"S." refers to the transcript of petitioner's sentencing hearing.

that the prosecutor violated petitioner's right to a fair trial by improperly commenting during summation that, "We are here because [petitioner] does have the right to a trial" (Brief for Defendant-Appellant, dated June 2003 ("Pet. App. Div. Br.") at 15, annexed as Exhibit A to Declaration of Ashlyn Dannelly, Esq., dated April 18, 2006 ("Dannelly Decl.")).  In his pro se supplemental brief, petitioner raised five additional claims, namely: (1) the admission of Chen's identification of petitioner was improper because it was the product of an unduly suggestive show-up procedure and not independently reliable, (2) the Trial Judge's jury instructions were deficient because she (a) failed to provide instructions to prospective and sworn-in jurors the first eight times they left the courtroom, (b) delivered an incomplete preliminary charge to the jury, and (c) gave an incomplete jury charge on the issue of evaluating inconsistent testimony, (3) petitioner's sentence was excessive and constitutes cruel and unusual punishment, (4) the prosecutor engaged in misconduct by (a) making improper remarks throughout trial, (b) vouching for Chen's credibility during summation, and (c) "personalizing" his closing statement, and (5) trial counsel was ineffective for failing to (a) request that instructions be read to prospective and sworn-in jurors the first eight times they exited the courtroom, (b) object to the prosecutor's personalizing his closing statement, (c) object to the prosecutor's vouch-

ing for Chen's credibility, and (d) challenge for cause a poten-
tial juror who was a sheriff's deputy (Appellant's Pro Se Supple-
mental Brief, dated Feb. 17, 2004 ("Pet. Pro Se Br.") at 13, 22,
26, 28, 30, 31, annexed as Exhibit C to Dannelly Decl.).

On May 18, 2004, the Appellate Division unanimously
affirmed petitioner's conviction. People v. Charlemagne, 7
A.D.3d 396, 776 N.Y.S.2d 470 (1st Dep't 2004). It held that the
prosecutorial misconduct claim based on the prosecutor's comment
about petitioner's right to a trial was "unpreserved" for appel-
late review and it declined to review it in the interest of
justice. The Appellate Division held in the alternative that
"although the prosecutor's remarks could be viewed as improperly
denigrating defendant's exercise of his right to proceed to
trial . . ., we find any error to be harmless in light of the
court's curative actions and its final instructions to the jury,
along with the overwhelming evidence of [petitioner's] guilt."
People v. Charlemagne, supra, 7 A.D.3d at 396-97, 776 N.Y.S.2d at
471. Lastly, the Appellate Division "considered and rejected"
petitioner's remaining claims. People v. Charlemagne, supra, 7
A.D.3d at 397, 776 N.Y.S.2d at 471.

Thereafter, petitioner requested leave to appeal to the
New York Court of Appeals, which was denied on August 3, 2004.
People v. Charlemagne, 3 N.Y.3d 672, 817 N.E.2d 828, 784 N.Y.S.2d
10 (2004).

E. <u>Petitioner's Claims</u>

In his habeas corpus petition, petitioner asserts five claims: (1) Justice Yates improperly admitted Chen's identification testimony because it was the product of an unduly suggestive show-up procedure and not independently reliable, (2) the Trial Judge's jury instructions were deficient because she (a) failed to provide instructions to prospective and sworn-in jurors the first eight times they left the courtroom, (b) delivered an incomplete preliminary charge to the jury, and (c) gave an incomplete jury charge on the issue of evaluating inconsistent testimony, (3) his sentence was excessive and constitutes cruel and unusual punishment, (4) the prosecutor engaged in misconduct by (a) commenting on petitioner's right to a trial during summation, (b) making improper remarks throughout trial, (c) vouching for Chen's credibility during summation, and (d) "personalizing" his closing statement, and (5) trial counsel was ineffective for failing to (a) request that instructions be read to prospective and sworn-in jurors the first eight times they exited the courtroom, (b) object to the prosecutor's personalizing his closing statement, (c) object to the prosecutor's improper vouching for Chen's credibility, and (d) challenge for cause a prospective juror who was a sheriff's deputy (Petition Under 28 U.S.C. § 2254

for Writ of Habeas Corpus by a Person in State Custody, dated

Oct. 26, 2005 ("Habeas Pet.") ¶ 13 and annexed Exhibits).[5]

III.  Analysis

I shall first analyze the claim that respondent argues

is procedurally barred from habeas review and then address the

merits of the remaining claims.

A.  Procedural Bar

Respondent argues that the prosecutorial misconduct

claim based on the prosecutor's comment regarding petitioner's

right to a trial is procedurally barred from federal habeas

review (Respondent's Memorandum of Law in Opposition to Peti-

tioner's Application for a Writ of Habeas Corpus, dated Apr. 18,

2006 ("Resp. Mem.") at 27-32).

A habeas petitioner's constitutional claim can be

procedurally barred if it is not asserted in state court proceed-

---

[5]Although the habeas petition filed with the court asserts
only the prosecutorial misconduct claim raised in petitioner's
initial appellate brief (see Docket Item 1 at ¶ 13), the copy of
the habeas petition submitted by respondent indicates that
petitioner "would like to raise" all the claims he asserted on
direct appeal (Habeas Pet. ¶ 13, annexed as Exhibit K to Dannelly
Decl.).  Where, as here, a petitioner is proceeding pro se, he is
entitled to have his petition read liberally and construed to
raise the strongest claims that it suggests.  Haines v. Kerner,
404 U.S. 519, 520 (1972); Williams v. Kullman, 722 F.2d 1048,
1050 (2d Cir. 1983).  Accordingly, I construe the habeas petition
as asserting all the claims petitioner raised on direct appeal.

ings in accordance with state procedural requirements and the

state courts rely on that violation of state procedural require-

ments to reject the claim.  As the Court of Appeals for the

Second Circuit has explained:

>        The independent and adequate state ground doctrine
> first arose in the context of direct appeals to the
> Supreme Court from final judgments of the state courts.
> Under that doctrine the Supreme Court "will not review
> a question of federal law decided by a state court if
> the decision of that court rests on a state law ground
> that is independent of the federal question and ade-
> quate to support the judgment." Coleman v. Thompson,
> 501 U.S. 722, 729, 111 S.Ct. 2546, 115 L.Ed.2d 640
> (1991).  Moreover, "[t]his rule applies whether the
> state law ground is substantive or procedural."  Id.

>                    *      *      *

>        The doctrine also applies in the context of fed-
> eral courts reviewing applications for a writ of habeas
> corpus . . . .  [I]nvoking principles of comity and
> federalism . . . federal habeas courts faced with an
> independent and adequate state ground of decision defer
> in the same manner as does the Supreme Court on direct
> review.

Garcia v. Lewis, 188 F.3d 71, 76-77 (2d Cir. 1999).  See also

Murden v. Artuz, 497 F.3d 178, 191-92 (2d Cir. 2007); Cotto v.

Herbert, 331 F.3d 217, 239-41 (2d Cir. 2003); Rhagi v. Artuz, 309

F.3d 103, 106 (2d Cir. 2002)("[I]t is settled law that an inde-

pendent and adequate state law ground for a state court convic-

tion cannot be disturbed on habeas."), citing Coleman v. Thomp-

son, 501 U.S. 722, 729-31 (1991); Brown v. State of New York, 04-

CV-1087 (NG)(VVP), 2006 WL 3085704 at *2 (E.D.N.Y. Oct. 30,

2006)("When a habeas corpus petitioner defaults a federal claim

in state court . . . by failing to preserve the claim for state appellate review . . . , the independent and adequate state ground doctrine bars federal habeas corpus review.").

Dismissal of a claim on the ground that consideration of the merits is precluded by an adequate and independent state procedural ground is appropriate where the last reasoned state court decision expressly relies on a state procedural bar:

> In Harris [v. Reed], 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989)], the Court held that "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar." Harris, 489 U.S. at 263, 109 S.Ct. 1038 (internal quotation marks omitted). We apply the Long/Harris presumption to the last "reasoned state judgment" . . . . See Ylst v. Nunnemaker, 501 U.S. 797, 803, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991).

Jones v. Stinson, 229 F.3d 112, 118 (2d Cir. 2000). See also Galarza v. Keane, 252 F.3d 630, 637 (2d Cir. 2001)("We have repeatedly stated that in order for federal habeas review to be procedurally barred, a state court must actually have relied on a procedural bar as an independent basis for its disposition of the case, and the state court's reliance on state law must be unambiguous and clear from the face of the opinion.").

As long as the state court relies on a procedural bar as an independent basis for its decision, a claim will be procedurally barred on federal habeas review even where a state court

addresses the merits of the claim in the alternative. As the
Court of Appeals for the Second Circuit has noted:

> This court has held that "federal habeas review is
> foreclosed when a state court has expressly relied on a
> procedural default as an independent and adequate state
> ground, even where the state court has also ruled in
> the alternative on the merits of the federal claim."
> Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990);
> Harris, 489 U.S. at 264 n.10, 109 S.Ct. at 1044 n.10
> ("[A] state court need not fear reaching the merits of
> a federal claim in an alternative holding."); Wedra v.
> Lefevre, 988 F.2d 334, 338-39 (2d Cir. 1993).

Glenn v. Bartlett, 98 F.3d 721, 724 (2d Cir. 1996). See also
Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 810 (2d Cir. 2000);
Robles v. Superintendent of Elmira Facility, 07 Civ. 596 (LBS),
2007 WL 2600857 at *3 n.3 (S.D.N.Y. Aug. 30, 2007); Ashley v.
Burge, 05 Civ. 4497 (JGK), 2006 WL 3327589 at *5 n.5 (S.D.N.Y.
Nov. 3, 2006).

Finally, even where the last reasoned decision of the
state court expressly rejects a federal constitutional claim on a
state procedural ground, federal habeas corpus review will not be
precluded if (1) the state procedural ground is not independent
and adequate, see Jimenez v. Walker, 458 F.3d 130, 138 (2d Cir.
2006); Monroe v. Kuhlman, 433 F.3d 236, 241-42 (2d Cir. 2006);
Cotto v. Herbert, supra, 331 F.3d at 238-39, (2) there is cause
for and prejudice from petitioner's failure to assert his claims
in accordance with state procedural law, or (3) a failure to
consider the claim would result in a fundamental miscarriage of
justice. Schlup v. Delo, 513 U.S. 298, 324-27 (1995); Coleman v.

Thompson, supra, 501 U.S. at 748-50; Harris v. Reed, 489 U.S. 255, 262 (1989); Green v. Travis, 414 F.3d 288, 294 (2d Cir. 2005).

Here, the Appellate Division rejected petitioner's claim that the prosecution improperly commented on petitioner's right to a trial on an independent and adequate state law ground by stating:

> Since defendant did not request any further relief after his objections were sustained, his challenge to the prosecutor's summation remark concerning defendant's right to a trial is unpreserved (People v. Medina, 53 N.Y.2d 951, 424 N.E.2d 276, 441 N.Y.S.2d 442 (1981)), and we decline to review it in the interest of justice.

People v. Charlemagne, supra, 7 A.D.3d at 396, 776 N.Y.S.2d at 471. This holding was clearly based on New York's contemporaneous objection rule. See N.Y. C.P.L. § 470.05(2).[6] To preserve for appellate review a challenge to a prosecutor's comments during summation, this rule requires a defendant to timely object to such comments and, when those objections are sustained, seek a curative instruction or move for a mistrial. People v. Medina,

---

[6]Section 470.05(2) provides in pertinent part:

> For purposes of appeal, a question of law with respect to a ruling or instruction of a criminal court during a trial or proceeding is presented when a protest thereto was registered, by the party claiming error, at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same.

N.Y. C.P.L. § 470.05(2).

53 N.Y.2d 951, 953, 424 N.E.2d 276, 277, 441 N.Y.S.2d 442, 443 (1981); see also Simpson v. Portuondo, 01 Civ. 1379 (BSJ)(AJP), 2001 WL 830946 at *11 (S.D.N.Y. July 12, 2001) ("Under New York law, in order to preserve his claims for appellate review, [petitioner] was required to raise his challenges to the prosecutor's alleged errors in summation by way of specific objections before the trial court, and, if his objections were sustained, seek further relief.").

The record here reveals that defense counsel did not properly preserve this aspect of petitioner's prosecutorial misconduct claim because he did not request a curative instruction or move for a mistrial after the Trial Judge sustained his objections to the prosecutor's comment:

> [PEOPLE]: So why are we here? Why do we have a judge, two lawyers, a stenographer? We are here because [petitioner] does have the right to a trial where he will see the evidence that's being use to --
>
> [DEFENSE]: Objection.
>
> THE COURT: Sustained. Don't comment.
>
> [PEOPLE]: The [petitioner] has the right to this procedure, ladies and gentlemen.
>
> [DEFENSE]: Objection.
>
> THE COURT: Sustained. Don't comment. Continue with your summation.
>
> [PEOPLE]: Very well.

(Tr. 525-26). The prosecutor then promptly finished his summation and defense counsel sought no further relief (Tr. 527).

16

Because the New York Court of Appeals denied petitioner leave to appeal without comment, People v. Charlemagne, supra, 3 N.Y.3d at 672, 817 N.E.2d at 828, 784 N.Y.S.2d at 10, the Appellate Division was the "last state court rendering a judgment" on this claim. Harris v. Reed, supra, 489 U.S. at 262; see Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim [are presumed to] rest upon the same ground."). Thus, the Appellate Division's rejection of this claim gives rise to a procedural bar precluding federal habeas review if the court's reliance on New York's contemporaneous objection rule is "independent" of the merits of the federal claim and this state rule is an "adequate" basis for the court's decision. Harris v. Reed, supra, 489 U.S. at 260-61.

It is clear from the face of the Appellate Division's decision that its ruling rested on an "independent" state procedural ground. In rejecting petitioner's claim, the court stated that the claim was "unpreserved[.]" People v. Charlemagne, supra, 7 A.D.3d at 396, 776 N.Y.S.2d at 471. This language in no way implicated the merits of petitioner's claim of prosecutorial misconduct.

In addition, New York's contemporaneous objection rule is "adequate" to support the Appellate Division's decision. A

state procedural rule is adequate if it is "'firmly established and regularly followed' by the state in question." Garcia v. Lewis, supra, 188 F.3d at 77, quoting Ford v. Georgia, 498 U.S. 411, 423-24 (1991). New York courts routinely apply the contemporaneous objection rule in denying review of claims alleging prosecutorial misconduct during summation where defense counsel fails to request a curative instruction or move for a mistrial after objections to the prosecutor's remarks are sustained. E.g., People v. Norman, 40 A.D.3d 1130, 1131, 837 N.Y.S.2d 277, 279 (2d Dep't 2007)("The defendant's contention that the prosecutor engaged in misconduct during summation is unpreserved for appellate review since he . . . failed to seek curative instructions or move for a mistrial when his objections were sustained (see CPL 470.05(2))[.]"); People v. O'Henry, 13 A.D.3d 470, 470, 785 N.Y.S.2d 715, 716 (2d Dep't 2004)("The defendant's challenge to certain comments made by the prosecutor during summation is also unpreserved for appellate review, since the defense counsel failed to request curative instructions or move for a mistrial when the trial court sustained the defense counsel's objection (see CPL 470.05(2))[.]"); People v. Powell, 4 A.D.3d 489, 490, 771 N.Y.S.2d 678, 678 (2d Dep't 2004)("The defendant's challenges to the prosecutor's summation are unpreserved for appellate review because he . . . failed to seek further ameliorative action after certain objections were sustained[.]"). Thus, this

18

aspect of petitioner's prosecutorial misconduct claim is proce-durally barred from federal habeas review.  See Reardon v. Richardson, 956 F.2d 391, 391-92 (2d Cir. 1992)(per curiam); Eugene v. Payant, 06-CV-6024 (SJF), 2007 WL 2116375 at *3 (E.D.N.Y. July 13, 2007).

Petitioner can overcome this procedural bar if he can show "cause for" and "prejudice" from his state procedural default or that a failure to consider his federal claim will result in a "fundamental miscarriage of justice."  Coleman v. Thompson, supra, 501 U.S. at 750.  Cause for a state procedural default is established when a petitioner shows that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule[.]"  Murray v. Carrier, 477 U.S. 478, 488 (1986).  For example, "counsel's ineffectiveness in failing properly to preserve [a] claim for review in state court" may constitute cause for a procedural default.  Edwards v. Carpenter, 529 U.S. 446, 451 (2000).

Here, petitioner does not make any showing of cause for his procedural default.  Although petitioner advances a claim of ineffective assistance of trial counsel, this claim cannot constitute cause because it is not based on trial counsel's failure to preserve his claim of prosecutorial misconduct.  See Edwards v. Carpenter, supra, 529 U.S. at 451-52; Mileto v. Philips, 03-CV-0353 (NPM), 2007 WL 1746249 at *7 (N.D.N.Y. June

13, 2007)(petitioner did not establish cause for procedural default of judicial bias claim where petitioner's federal ineffective-assistance claim was not based on trial counsel's failure to preserve the judicial bias claim).  Because petitioner cannot show cause, I need not address whether he can show prejudice.  Levine v. Comm'r of Corr. Servs., 44 F.3d 121, 127 (2d Cir. 1995); Stepney v. Lopes, 760 F.2d 40, 45 (2d Cir. 1985)("Since a petitioner who has procedurally defaulted in state court must show both cause and prejudice in order to obtain federal habeas review, we need not, in light of our conclusion that there was no showing of cause, reach the question of whether or not [petitioner] showed prejudice.").

Finally, petitioner does not and cannot show that a fundamental miscarriage of justice will result if his claim is not considered.  "To establish a 'miscarriage of justice,' a petitioner must demonstrate that he is 'actually innocent.'"  Cruz v. Filion, 456 F. Supp.2d 474, 481 (S.D.N.Y. 2006), quoting Aparicio v. Artuz, 269 F.3d 78, 90 (2d Cir. 2001).  To sustain this burden, petitioner must offer "new reliable evidence . . . that was not presented at trial."  Schlup v. Delo, supra, 513 U.S. at 324.  Petitioner has not offered any new evidence showing his actual innocence.

Accordingly, petitioner's claim of prosecutorial misconduct based on the prosecutor's comment during summation

about petitioner's right to a trial should be dismissed as procedurally barred.

B. <u>Merits</u>

I now turn to the merits of petitioner's non-barred claims.

1. <u>Standard of Review</u>

A habeas petitioner must meet a stringent standard before a federal court can issue the writ.  Specifically, habeas relief may be granted only when the state court's decision:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The Supreme Court has explained the alternative standards set of in the former paragraph as follows:

> First, we have explained that a decision by a state court is "contrary to" our clearly established law if it "applies a rule that contradicts the governing law set forth in our cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent." <u>Williams v. Taylor</u>, 529 U.S. 362, 405-406, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). <u>See</u> <u>also</u> <u>Early v. Packer</u>, 537 U.S. 3, 7-8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) (<u>per</u> <u>curiam</u>). . . .

Second, [petitioner] can satisfy § 2254(d) if he can demonstrate that the [State] Court's decision involved an "unreasonable application" of clearly established law. As we have explained:

> "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly. See Bell v. Cone, 535 U.S. 685, 698-699, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002); Williams, supra, at 411, 120 S.Ct. 1495. Rather, it is the habeas applicant's burden to show that the state court applied [that case] to the facts of his case in an objectively unreasonable manner."

Woodford v. Visciotti, 537 U.S. 19, 24-25, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002) (per curiam).

Price v. Vincent, 538 U.S. 634, 640-41 (2003); accord Brown v. Payton, 544 U.S. 133, 139-40 (2005); see also Lockyer v. Andrade, 538 U.S. 63, 70-72 (2003); Hawkins v. Costello, 460 F.3d 238, 242-43 (2d Cir. 2006); Brown v. Artuz, 283 F.3d 492, 500-01 (2d Cir. 2002).

In addition to the definition of "unreasonable application" set forth above, a state court may unreasonably apply Supreme Court precedent "if the state court unreasonably extends a legal rule established by the Supreme Court or if it unreasonably fails to extend a legal rule to a context in which the rule reasonably should apply." Serrano v. Fischer, 412 F.3d 292, 296-97 (2d Cir. 2005). "Unreasonableness is determined by an 'objective' standard." Gersten v. Senkowski, 426 F.3d 588, 607 (2d Cir. 2005), quoting Williams v. Taylor, 529 U.S. 362, 409 (2000). In order for a state court's application of Supreme

Court precedent to be unreasonable, "[s]ome increment of incorrectness beyond error" is required.  Henry v. Poole, 409 F.3d 48, 68 (2d Cir. 2005)(internal quotation marks omitted); accord Brown v. Artuz, supra, 283 F.3d at 500-01; Aparicio v. Artuz, supra, 269 F.3d at 94.  However, "the increment need not be great; otherwise, habeas relief would be limited to state court decisions 'so far off the mark as to suggest judicial incompetence.'"  Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000), quoting Matteo v. Superintendent, SCI Albion, 171 F.3d 877, 889 (3d Cir. 1999)(en banc); accord Gersten v. Senkowski, supra, 426 F.3d at 607.

The nature of the rule in issue also impacts the assessment of the reasonableness of the state court's action.

> [W]hile very specific rules may not permit much leeway in their interpretation, the same is not true of more general rules, the meaning of which "must emerge in application over the course of time."  [Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)].  "The more general the rule, the more leeway courts have in reaching outcomes in case by case determinations."  Id.

Serrano v. Fischer, supra, 412 F.3d at 297; see also Hawkins v. Costello, supra, 460 F.3d at 243.

Both the "contrary to" and "unreasonable application" clauses "restrict[] the source of clearly established law to [the Supreme] Court's jurisprudence."  Williams v. Taylor, supra, 529 U.S. at 412.  "That federal law, as defined by the Supreme Court, may either be a generalized standard enunciated in the [Supreme]

Court's case law or a bright-line rule designed to effectuate such a standard in a particular context." Kennaugh v. Miller, 289 F.3d 36, 42 (2d Cir. 2002). "A petitioner can not win habeas relief solely by demonstrating that the state court unreasonably applied Second Circuit precedent." Yung v. Walker, 341 F.3d 104, 110 (2d Cir. 2003); accord DelValle v. Armstrong, 306 F.3d 1197, 1200 (2d Cir. 2002).

To be entitled to the deferential standard of review under subsection 2254(d), the state courts must have resolved the petitioner's claims "on the merits." Cotto v. Herbert, supra, 331 F.3d at 230; see also Ryan v. Miller, 303 F.3d 231, 245 (2d Cir. 2002)("[I]n order for this deferential standard of § 2254 to apply, we must first determine that the state court considered [petitioner's claim] on its merits."); Sellan v. Kuhlman, 261 F.3d 303, 309-10 (2d Cir. 2001).

The Second Circuit has instructed habeas courts to "classify" a state court decision as either: (1) "fairly appearing to rest primarily on federal law or to be interwoven with federal law"; or (2) "fairly appearing to rest primarily on state procedural law." Jimenez v. Walker, supra, 458 F.3d at 145. "If the state court's decision falls into the first category, and does not 'contain a clear statement of reliance on a state procedural bar,' the decision must be treated as having been made on the merits." Mateo v. Fishkill Corr. Facility, CV-

04-3420 (DGT), 2007 WL 2362205 at *5 (E.D.N.Y. Aug. 14, 2007),
quoting Jimenez v. Walker, supra, 458 F.3d at 138. To make this
classification, habeas courts in this circuit examine "(1) the
face of the state-court opinion, (2) whether the state court was
aware of a procedural bar, and (3) the practice of state courts
in similar circumstances." Jimenez v. Walker, supra, 458 F.3d at
145 n.16.

Here, upon examining these three factors, I conclude
that the Appellate Division adjudicated the merits of
petitioner's remaining non-barred claims by stating it had
"considered and rejected the claims contained in defendant's pro
se supplemental brief." People v. Charlemagne, supra, 7 A.D.3d
at 397, 776 N.Y.S.2d at 471. It is clear from this language that
the Appellate Division rejected these claims "on the merits."
Francolino v. Kuhlman, 365 F.3d 137, 141 (2d Cir. 2004)(Appellate
Division adjudicated merits by stating that it had "considered
and rejected [petitioner's] remaining claims"); see also Wade v.
Herbert, 391 F.3d 135, 140-42 (2d Cir. 2004)(Appellate Division
adjudicated merits where it held that "[t]he [petitioner's]
remaining contentions are without merit"). Lastly, the fact that
the Appellate Division did not explicitly refer to specific
provisions of the federal Constitution or relevant federal case
law is of no moment. See Sellan v. Kuhlman, supra, 261 F.3d at
312 (noting that a state court decision may be deemed on the

merits "even if the state court does not explicitly refer to . . . relevant federal case law"); <u>Cheng Kang Shi v. Connolly</u>, 06 CV 2093 (NG)(RLM), 2007 WL 4380276 at *6 (E.D.N.Y. Dec. 13, 2007)("AEDPA's deferential standard of review applies even if the state court did not explicitly refer to either the federal claim or to relevant federal case law.")(internal quotation marks omitted).

Because petitioner's remaining claims where adjudicated on the merits, I must afford the Appellate Division's decision on these claims the deferential standard of review set forth in 28 U.S.C. § 2254(d).

### 2. Show-Up Identification

Petitioner first claims that his due process right to a fair trial was violated by the admission of Chen's identification of him because this identification arose from an unduly suggestive show-up procedure and was not independently reliable (Habeas Pet. ¶ 13; Petitioner's Memorandum of Law in Support of Habeas Petition, dated July 14, 2006 ("Pet. Mem.") at 6-7, 10-16).

a. Suggestiveness
   of Show-Up Procedure

The principles applicable to a claim of unduly
suggestive identification procedures were comprehensively set
forth in Raheem v. Kelly, 257 F.3d 122, 133 (2d Cir. 2001):

> Due process requires that criminal trials "proceed
> consistently with 'that fundamental fairness' which is
> 'essential to the very concept of justice.'" Dunnigan
> v. Keane, 137 F.3d 117, 125 (2d Cir.) (quoting Lisenba
> v. California, 314 U.S. 219, 236, 62 S.Ct. 280, 86
> L.Ed. 166 (1941)), cert. denied, 525 U.S. 840, 119
> S.Ct. 101, 142 L.Ed.2d 81 (1998).  When the prosecution
> offers testimony from an eyewitness to identify the
> defendant as a perpetrator of the offense, fundamental
> fairness requires that that identification testimony be
> reliable.  See, e.g., Manson v. Brathwaite, 432 U.S.
> 98, 112-14, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); id.
> at 114, 97 S.Ct. 2243 ("reliability is the linchpin in
> determining the admissibility of identification
> testimony"); see also Watkins v. Sowders, 449 U.S. 341,
> 347, 101 S.Ct. 654, 66 L.Ed.2d 549 (1981) ("It is the
> reliability of identification evidence that primarily
> determines its admissibility . . . .").

> When the defendant objects to identification
> testimony to be given by a witness who has identified
> him prior to trial, a sequential inquiry is required in
> order to determine whether either the prior
> identification or an in-court identification of the
> defendant at trial is admissible.  The court must first
> determine whether the pretrial identification
> procedures unduly and unnecessarily suggested that the
> defendant was the perpetrator. . . .  If the procedures
> were not suggestive, the identification evidence
> presents no due process obstacle to admissibility, see,
> e.g., Jarrett v. Headley, 802 F.2d 34, 42 (2d Cir.
> 1986) . . . .  If the court finds, however, that the
> procedures were suggestive, it must then determine
> whether the identification was nonetheless
> independently reliable. . . .  In sum, the
> identification evidence will be admissible if (a) the
> procedures were not suggestive or (b) the
> identification has independent reliability.  See, e.g.,

> Manson v. Brathwaite, 432 U.S. at 114, 97 S.Ct. 2243;
> Neil v. Biggers, 409 U.S. 188, 199, 93 S.Ct. 375, 34
> L.Ed.2d 401 (1972); United States v. Salameh, 152 F.3d
> 88, 126 (2d Cir. 1998), cert. denied, 525 U.S. 1112,
> 119 S.Ct. 885, 142 L.Ed.2d 785 (1999).

See also Kennaugh v. Miller, supra, 289 F.3d at 43-44; United States v. Wong, 40 F.3d 1347, 1359 (2d Cir. 1994); Williams v. Ercole, 06 Civ. 0044 (RPP), 2007 WL 1052446 at *3 (S.D.N.Y. Apr. 6, 2007); Valtin v. Hollins, 248 F. Supp.2d 311, 317-18 (S.D.N.Y. 2003); Smith v. Smith, 02 Civ. 7308 (WHP)(JCF), 2003 WL 22290984 at *7-*8 (S.D.N.Y. Sept. 29, 2003).

Although show-up identifications of the type utilized here are disfavored, they are not per se unduly suggestive. Stovall v. Denno, 388 U.S. 293, 302 (1967), overruled on other grounds, Griffith v. Kentucky, 479 U.S. 314 (1987). The fruits of such an identification will be excluded "only if [the identification] was both produced through an unnecessarily suggestive procedure and [was] unreliable." United States v. Bautista, 23 F.3d 726, 729 (2d Cir. 1994); see United States v. Ciak, 102 F.3d 38, 42 (2d Cir. 1996). "[W]hether [an] identification procedure was unnecessarily suggestive depends on (1) [the] suggestiveness of the procedure and (2) [the] necessity of [the] procedure." United States v. Bautista, supra, 23 F.3d at 730, citing United States v. Stevens, 935 F.2d 1380, 1389 (3rd Cir. 1991). "If the pretrial procedures were not suggestive, any remaining questions as to reliability . . . go to the weight of

the identification and not to its admissibility, and the identification therefore is generally admissible without any further reliability inquiry." United States v. Thai, 29 F.3d 785, 808 (2d Cir. 1994); see United States v. Matthews, 20 F.3d 538, 547 (2d Cir. 1994).

In this case, the show-up procedure was neither suggestive nor unnecessary. Petitioner first argues that the procedure was tainted because he was in handcuffs and surrounded by police vehicles and two or three uniformed and three plainclothes police officers when Chen identified him (Pet. Mem. at 14, 16-17; Pet. App. Div. Br. at 14). This argument is unavailing as numerous courts have held that show-ups held under similar circumstances were not unduly suggestive. E.g., United States v. Bautista, supra, 23 F.3d at 730 (defendant in handcuffs, at night, in police custody and illuminated by flashlights); Jones v. West, 473 F. Supp.2d 390, 418 (W.D.N.Y. 2007)(defendant in handcuffs accompanied by at least one police officer); Goston v. Rivera, 462 F. Supp.2d 383, 389 (W.D.N.Y. 2006)(defendant in handcuffs sitting in police car); Tobias v. Portuondo, 367 F. Supp.2d 384, 391-92 (W.D.N.Y. 2004)(defendant in handcuffs sitting in police car); Mendoza v. McGinnis, 03 Civ. 2598 (DC), 2004 WL 736894 at *6 (S.D.N.Y. Apr. 5, 2004)(defendant in handcuffs and "scuffling" with police); Michael v. Portuando, 99-CV-3195 (JG), 2002 WL 1732813 at *8 (E.D.N.Y. July 23,

2002)(defendant is handcuffs in police custody); <u>United States v.</u>
<u>Ortiz</u>, 99 Cr. 532 (DC), 2000 WL 37998 at *1 (S.D.N.Y. Jan. 18,
2000)(defendant in handcuffs, next to police car and accompanied
by uniformed police officers).

Petitioner next contends that the show-up was tainted
because he was shown alongside Padilla (Pet. App. Div. Br. at 14,
16-17). Courts have also squarely rejected such contentions,
holding that a show-up is not rendered unduly suggestive by
showing several suspects to a witness simultaneously. <u>E.g.</u>,
<u>United States v. Butler</u>, 970 F.2d 1017, 1021 (2d Cir. 1992);
<u>United States ex rel. Cummings v. Zelker</u>, 455 F.2d 714, 715-16
(2d Cir. 1972); <u>Williams v. Ercole</u>, <u>supra</u>, 2007 WL 1052446 at *4;
<u>McBride v. Senkowski</u>, 98 Civ. 8663 (MBM), 2002 WL 523275 at *5
(S.D.N.Y. Apr. 8, 2002); <u>United States v. Ortiz</u>, <u>supra</u>, 2000 WL
37998 at *1; <u>People v. Brown</u>, 288 A.D.2d 152, 152-53, 733
N.Y.S.2d 182, 183-84 (1st Dep't 2001); <u>People v. Bumbray</u>, 259
A.D.2d 364, 364, 688 N.Y.S.2d 9, 9 (1st Dep't 1999).

Relying on <u>Brisco v. Phillips</u>, 376 F. Supp.2d 306
(E.D.N.Y. 2005), petitioner further argues that the police
improperly aggravated the suggestiveness of the show-up by
putting petitioner's hat on him, which, according to petitioner,
elicited Chen's identification (Pet. Mem. at 1, 9-14). In
<u>Brisco</u>, during a show-up procedure, police instructed a burglary
suspect to hold a pair of maroon shorts near his waist as if he

were wearing them.  The shorts matched a description of the

perpetrator's clothing that the victim had given to police.

Although not handcuffed, the suspect was surrounded by police

officers and two marked police vehicles while he stood in the

victim's driveway.  From inside her house, the victim identified

the suspect as the perpetrator primarily on the basis of the

maroon shorts.  The court held that the show-up was impermissibly

suggestive under these circumstances.  Brisco v. Phillips, supra,

376 F. Supp.2d at 314.

While the words or actions of the police may render a

show-up procedure "so unnecessarily suggestive and conducive to

irreparable mistaken identification that [the defendant is]

denied due process of law[,]" Stovall v. Denno, supra, 388 U.S.

at 302, petitioner's argument and his reliance on Brisco are

unpersuasive.  "[P]olice suggestiveness does not require the

suppression of an identification if the witness was not thereby

influenced, as, for example, when the witness's identification

was already positive." Jarrett v. Headley, 802 F.2d 34, 41-42

(2d Cir. 1986).  Unlike in Brisco where the maroon shorts played

a significant role in the victim's identification of the suspect,

here, the hat played no role in Chen's initial identification of

petitioner.  Chen arrived at the show-up location in the back of

a police car[7] and, before exiting the car, which was about thirty feet from petitioner, and before police put petitioner's hat on him, Chen immediately identified petitioner as one of the men he saw descending the fire escape (Tr. 329, 346-47).  Thus, the police's conduct did not influence Chen at all.  See Cannon v. Graham, 06 Civ. 1175 (AKH), 2006 WL 3486803 at *5 (S.D.N.Y. Oct. 31 2006)(no suggestive police conduct during show-up where "[complainant] instantly identified petitioner while petitioner was seated at a desk, twenty feet away, with no initial police prompting or suggestion").

Although the court in Brisco found that "the act of compelling the [suspect] to hold up maroon shorts in front of him as he stood there in the company of three uniformed police officers could only have been designed to insure a positive identification[,]" Brisco v. Phillips, supra, 376 F. Supp.2d at 315, the record here does not contain any evidence that the officers put petitioner's hat on him in an attempt to elicit a positive identification from Chen.  The police put the hat on petitioner only after Chen identified petitioner and after Chen exited the car and asked where the hat was (Tr. 330, 347).  At

---

[7]I note that the record contains no evidence that Officer Hubert, while driving Chen to the show-up, made any statements to Chen that suggested that the individuals apprehended were in fact the perpetrators (H. 20-21, 41).  The absences of such comments further supports the conclusion that the show-up was not unduly suggestive.

that moment, police retrieved the hat, which had previously fallen off, and placed it on petitioner; Chen then reiterated his initial positive identification of petitioner (Tr. 330).

Petitioner next argues that there "was no justification for a show-up rather than a line-up" (Pet. App. Div. Br. at 15). This argument fails because the circumstances here made it necessary to use a show-up procedure. Chen called 911 almost immediately after he realized that the perpetrators of the burglary were still inside the apartment (Tr. 299-300). The police were then promptly notified that a burglary had occurred and the perpetrators had fled (Tr. 356). When police apprehended petitioner and Padilla, prompt identification of them was necessary to ensure that the officers had found the correct individuals before the trail had grown cold. Since the alternative of a formal line up would have required transporting petitioner and Padilla to the precinct and securing the presence of an appropriate number of "fillers" who had characteristics similar to these individuals, it would necessarily have taken hours to arrange. If petitioner and Padilla were not the individuals involved in the burglary, this time lag would have all but ensured the successful escape of the guilty parties. Given all these factors, it was essential for law enforcement to take the most expeditious steps possible to ensure that the persons in custody were, in fact, the persons sought. As noted

in <u>James v. Senkowski</u>, 97 Civ. 3327 (DLC), 1998 WL 217903 at *7

(S.D.N.Y. Apr. 29, 1998):

> "[P]rompt confrontation [is] desirable because it
> serve[s] to insure 'the immediate release of an
> innocent suspect and at the same time [to] enable the
> police to resume the search for the fleeing culprit
> while the trail is still fresh.'" <u>United States ex
> rel. Cummings v. Zelker</u>, 455 F.2d 714, 716 (2d Cir.),
> <u>cert. denied</u>, 406 U.S. 927, 92 S.Ct. 1800, 32 L.Ed.2d
> 128 (1972). Accordingly, "it is now settled law that
> prompt on-the-scene confrontation is 'consistent with
> good police work' and does not offend the principles
> established in <u>United States v. Wade</u>." <u>United States
> ex rel. Cummings v. Zelker</u>, 455 F.2d at 716 (citing,
> <u>inter alia</u>, <u>United States v. Sanchez</u>, 422 F.2d 1198,
> 1200 (2d Cir. 1970)).

<u>See also</u> <u>United States v. Bautista</u>, <u>supra</u>, 23 F.3d at 730; <u>United

States v. Nelson</u>, <u>supra</u>, 931 F. Supp. at 199-200; <u>Williams v.

Ercole</u>, <u>supra</u>, 2007 WL 1052446 at *4; <u>Valtin v. Hollins</u>, <u>supra</u>,

248 F. Supp.2d at 318 (rejecting petitioner's argument that

police should have conducted line-up instead of a show-up because

"the show-up constituted a desirable, prompt, on-the-scene

confrontation that served to insure that [petitioner] was the

same person described by [complainant] who allegedly had just

robbed [complainant].").

     Lastly, the fact that the show-up occurred within

thirty minutes of the burglary and only eighteen blocks from the

scene of the crime (Tr. 329) further suggests that the procedure

was not unduly suggestive and was, instead, the product of

effective police work. <u>See</u> <u>Francischelli v. Potter</u>, 03-CV-6091

(ENV), 2007 WL 776760 at *6 (E.D.N.Y. Mar. 12, 2007)("The showup

identification's advantages are most pronounced when it takes place in close temporal and geographic proximity to the crime."); Mendoza v. McGinnis, supra, 2004 WL 736894 at *6 ("Indeed, show-up identifications that occur in temporal and geographic proximity to the crime have generally been found constitutionally permissible and not unduly suggestive."), citing, inter alia, United States v. Butler, supra, 970 F.2d at 1021.

> b. Reliability of
>    Show-Up Identification

Even if the show-up had been unduly suggestive, I conclude that Chen's identification of petitioner would, nevertheless, be admissible because it was independently reliable. The factors relevant to assessing the reliability of identification testimony include "[1] the opportunity of the witness to view the criminal at the time of the crime, [2] the witness' degree of attention, [3] the accuracy of the witness' prior description of the criminal, [4] the level of certainty demonstrated by the witness at the confrontation, [5] and the length of time between the crime and the confrontation." Neil v. Biggers, 409 U.S. 188, 199-200 (1972).

First, Chen had a substantial opportunity to view petitioner after the burglary. Although Chen did not see petitioner in Liou's apartment during the crime, he heard someone lock the apartment door from the inside and heard what sounded

like a window opening or closing (Tr. 299-300, 334). Chen
immediately ran outside the apartment and saw petitioner and
Padilla descending the fire escape of the building (Tr. 300-01).
Chen testified that there was nothing obstructing his view of
these men and that he had an "excellent" profile view of
petitioner as he climbed down the ladder (Tr. 306, 308). Chen
further testified that he was only three to four feet away from
petitioner as he stepped off the ladder and onto the sidewalk
(Tr. 307). As petitioner and Padilla quickly walked away, Chen
followed them and remained twenty paces behind for about two to
three minutes (Tr. 320, 324, 337). Chen also testified that he
was wearing his contacts on this day and that he has 20/20 vision
when wearing them (Tr. 303-04).

Second, Chen's degree of attention was high. As Chen
followed petitioner and Padilla down the street, he focused
solely on these two men as he described what he saw to a 911
operator (Tr. 320, 324-25). Chen's attention was heightened
because he noticed that petitioner was talking on a silver
cellular phone with which Chen was familiar and he was surprised
that petitioner had such a high-end phone (Tr. 317-18, 336-37,
402-05).

Third, Chen also provided an accurate description of
petitioner prior to the show-up, describing petitioner as

Hispanic and wearing a hat, blue jeans, and a black jacket (Tr. 308, 313-14, 316-17, 335).

Fourth, Chen testified that at the time of the show-up he was "[v]ery confident" that petitioner was the man he saw climbing down the fire escape (Tr. 330). Chen's high level of confidence is corroborated by the testimony of Officers May and Huber, who stated that Chen had no problem identifying petitioner at the show-up (H. 31, 38-39).

Lastly, the short interval of time between the burglary and the show-up -- approximately thirty minutes (Tr. at 329) -- is further evidence that the identification was reliable. See United States ex rel. Cummings v. Zelker, supra, 455 F.2d at 717 (one hour); James v. Marshall, CV-05-1992 (BMC)(MDG), 2007 WL 3232513 at *13 (E.D.N.Y. Oct. 31, 2007)(forty-five minutes).

In sum, the show-up procedure used to identify petitioner was not unduly suggestive and Chen's identification of petitioner at the show-up was independently reliable. Thus, the Appellate Division's holding that the hearing court properly admitted Chen's identification evidence was not contrary to or an unreasonable application of clearly established Supreme Court precedent.

3.  <u>Jury Instructions</u>

Petitioner next attacks the Trial Judge's jury instructions in three respects.  First, petitioner claims that the Trial Judge deprived him of his due process rights by failing to provide adequate jury instructions at various points during his trial.  Specifically, petitioner asserts that the Trial Judge did not "give ANY INSTRUCTION [sic] to prospective jurors and sworn-in jurors the first eight times they left the Courtroom" (Pet. <u>Pro</u> <u>Se</u> Br. at 26)(caps in original).  Second, petitioner claims that the Trial Judge failed to give complete preliminary instructions pursuant to New York Criminal Procedure Law Section 270.40 (Pet. <u>Pro</u> <u>Se</u> Br. at 26-27).  Third, petitioner claims that the Trial Judge violated his due process right to a fair trial by refusing to supplement his incomplete jury charge on evaluating inconsistent testimony with language from New York's Criminal Jury Instructions ("CJI") (Pet. <u>Pro</u> <u>Se</u> Br. at 22-26).  Respondent contends that these claims do not warrant habeas relief (Resp. Mem. at 19-23).

To warrant habeas relief based on an erroneous state jury instruction, "it must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment."  <u>Cupp v. Naughten</u>, 414 U.S. 141, 146 (1973); <u>accord</u> <u>Davis v. Strack</u>, 270 F.3d 111,

123 (2d Cir. 2001); Smalls v. Batista, 191 F.3d 272, 277 (2d Cir.

1999).  In addition,

> [t]he burden of demonstrating that an erroneous
> instruction was so prejudicial that it will support a
> collateral attack on the constitutional validity of a
> state court's judgment is even greater than the showing
> required to establish plain error on direct appeal.
> The question in such a collateral proceeding is
> "whether the ailing instruction by itself so infected
> the entire trial that the resulting conviction violates
> due process" . . . .

Henderson v. Kibbe, 431 U.S. 145, 154 (1977); accord Estelle v.

McGuire, 502 U.S. 62, 72 (1991); DelValle v. Armstrong, supra,

306 F.3d at 1201; Roy v. Coxon, 907 F.2d 385, 391 (2d Cir. 1990).

Moreover, petitioner bears an "especially heavy" burden in

demonstrating constitutional error based on an omission because

an "an omission, or an incomplete [jury] instruction, is less

likely to be prejudicial than a misstatement of law."  Henderson

v. Kibbe, 431 U.S. 145, 155 (1977); accord Blazic v. Henderson,

900 F.2d 534, 542 (2d Cir. 1990).  Thus, to succeed on this

claim, petitioner must show that the Trial Judge's omission of

certain jury instructions or the incomplete nature of his

preliminary instructions (1) violated New York law and (2)

resulted in a deprivation of his right to due process.  See Davis

v. Strack, supra, 270 F.3d at 123; Manson v. Haponik, 05-CV-3412

(BMC), 2007 WL 2077895 at *4 (E.D.N.Y. July 18, 2007).

Here, petitioner does not show how the Trial Judge's

failure to give instructions to prospective jurors and sworn

jurors the first eight times they left the courtroom violated any provision of New York law, much less how it deprived him of his due process rights.  Petitioner does not allege what instructions the Trial Judge should have provided.  Additionally, the points at which petitioner claims the Trial Judge should have provided instructions (Tr. 87, 108, 132, 143, 179, 212, 220) all took place before opening statements and before any evidence was presented.  Thus, petitioner fails to show how he was prejudiced in any manner, and my reading of the transcript suggests none.

Similarly, petitioner's claim that the Trial Judge failed to provide complete preliminary jury instructions pursuant to New York Criminal Procedure Section 270.40[8] is without merit.

---

[8]Section 270.40 provides:

> After the jury has been sworn and before the people's opening address, the court must instruct the jury generally concerning its basic functions, duties and conduct.  Such instructions must include, among other matters, admonitions that the jurors may not converse among themselves or with anyone else upon any subject connected with the trial; that they may not read or listen to any accounts or discussions of the case reported by newspapers or other news media; that they may not visit or view the premises or place where the offense or offenses charged were allegedly committed or any other premises or place involved in the case; that prior to discharge, they may not request, accept, agree to accept, or discuss with any person receiving or accepting, any payment or benefit in consideration for supplying any information concerning the trial; and that they must promptly report to the court any incident within their knowledge involving an attempt by any person improperly to influence any member of the jury.
>
> (continued...)

The Trial Judge did not fully comply with Section 270.40 because he failed to admonish the jury that it was prohibited from taking payment in exchange for information about the trial (Tr. 221-225). However, an error of state law in a jury instruction does not, ipso facto, provide a basis for federal habeas relief. Estelle v. McGuire, supra, 502 U.S. at 71. The issue is whether the omission of this one instruction "so infected the entire trial that the resulting conviction violate[d] due process." Cupp v. Naughten, supra, 414 U.S. at 147.

As part of the preliminary charge, the Trial Judge instructed the jurors not to converse among themselves or with anyone else upon any subject connected with the trial and to report to the court any incidents of any person attempting improperly to influence any jury member (Tr. 224-25). Given these instructions, it follows by implication that the jurors were aware of their obligation not to exchange information concerning the trial for payment. I may assume that the jury followed the Trial Judge's instructions. Chalmers v. Mitchell, 73 F.3d 1262, 1267 (2d Cir. 1996)("We assume that a jury applies the instructions it is given."). Moreover, there is no evidence that the jury engaged in such conduct. Thus, the Trial Judge's failure to comply perfectly with Section 270.40 did not prejudice

petitioner and did not violate his constitutional due process rights.  See Ortiz v. Lefevre, 89 Civ. 6553 (MJL), 1990 WL 100889 at *1-*2 (S.D.N.Y. July 9, 1990)(habeas relief not warranted notwithstanding trial judge's failure to deliver four mandatory admonitions to the jury required by N.Y. Crim. Proc. L. § 270.40 because there was no evidence that jury was improperly influenced or that petitioner was prejudiced by trial judge's omissions).

Lastly, the Trial Judge's refusal to use the language from the CJI to supplement the jury charge does not warrant habeas relief.

During summation, defense counsel argued that Chen provided inconsistent testimony about the color and overall appearance of petitioner's jacket (Tr. 489-92).  In his charge to the jury, the Trial Judge instructed the jury that "in performing a function for determining what the facts are and where the truth lies, it is necessary for you to evaluate the testimony of each witness in order to determine the credibility of each witness and the weight that should be given to their testimony" (Tr. 536). The Trial Judge then charged the jury that they had "a right to apply all the tests and all the considerations and all the common sense which you would ordinarily apply in your everyday lives in judging the credibility of statements made to you and whether or not the person making those statements is telling you the truth" (Tr. 536-37).  Most importantly, the Trial Judge also instructed:

42

> You may consider whether a witness's testimony is
> consistent or inconsistent with that witness's previous
> testimony or statements, if any, were given . . . [and]
> whether a witness's testimony is supported or
> contradicted by other evidence. . . .

> You are not bound to take the testimony of any
> witnesses as being absolutely true or absolutely false.
> You may accept some of a witness's testimony as true
> and find some [of] it to be false or all of it to be
> [the] truth. . . .

> Whenever any inconsistencies appear in the
> testimony of a witness, it is your duty to reconcile
> them if you are honestly able to do so.

> You are not to reject arbitrarily the testimony of
> any witness.  You should consider the testimony of
> every witness carefully and determine whether you will
> accept or reject it in whole or in part.

(Tr. 537-39).  After the Trial Judge charged the jury, defense

counsel took exception to the instructions (Tr. 564).  Defense

counsel requested the Trial Judge to use the language in the CJI

instructing the jury that it could disregard those portions of a

witness's inconsistent testimony that it deemed false,

exaggerated, or mistaken and accept those portions that it deemed

true (Tr. 564-65; see also Pet. Pro Se Br. at 23).  In denying

this request, the Trial Judge stated that, "[T]he charges as a

whole properly instruct[ed] the jury as to how to evaluate

testimony" (Tr. 565).

In support of his argument that the charge was

erroneous, petitioner cites People v. Holmes, 215 A.D.2d 163, 626

N.Y.S.2d 154 (1st Dep't 1995).  In Holmes, the trial judge's

charge concerning inconsistencies in the testimony consisted of

43

only the following statement: "It is your responsibility, indeed your duty, ladies and gentlemen, to reconcile any inconsistencies in the evidence[.]" <u>People v. Holmes</u>, <u>supra</u>, 215 A.D.2d at 164-65, 626 N.Y.S.2d at 155 (internal quotation marks omitted). The Appellate Division held that this charge was erroneous, stating:

> Thus, [the jury was] virtually given a command that inconsistencies in the testimony should be disregarded. The court charged the jury: "It is your responsibility, indeed your duty, ladies and gentlemen, to reconcile any inconsistencies in the evidence", and simply went on to the next subject. <u>The court completely omitted the standard qualifying phrase given with this instruction, "if you are honestly able to do so"</u>. It also omitted the rest of the usual language about finding conflicting testimony that cannot be reconciled, and therefore disregarding the portion the jury deems false, exaggerated, or mistaken and accepting the portion deemed true.

<u>People v. Holmes</u>, <u>supra</u>, 215 A.D.2d at 164-65, 626 N.Y.S.2d at 155 (emphasis added). Petitioner contends that the instructions here were deficient because the Trial Judge also refused to include this "usual language" into the charge (Pet. <u>Pro</u> <u>Se</u> Br. at 24).

Petitioner's reliance on <u>Holmes</u> is unavailing. As the excerpt quoted above demonstrates, the Trial Judge charged the jury that "[w]henever any inconsistencies appear in the testimony of a witness, it is your duty to reconcile them <u>if you are honestly able to do so</u>" (Tr. at 539)(emphasis added). Thus, the Trial Judge here simply did not commit the error that was the basis for the decision in <u>Holmes</u>. The Trial Judge here went on

44

to instruct the jury that it could find that a witness's testimony was truthful or false in whole or in part and that it could accept or reject such testimony in whole or in part. Contrary to petitioner's argument, it appears that the Trial Judge here was aware of the decision in <u>Holmes</u> and deliberately crafted the charge to avoid the deficiencies cited in <u>Holmes</u>. Thus, petitioner has failed to demonstrate that the charge was failed to comply with the requirements of state law.

Petitioner also fails to meet his burden of establishing that the challenged jury charge violated his due process rights. <u>See</u> <u>DelValle v. Armstrong</u>, <u>supra</u>, 306 F.3d at 1200-01; <u>Cheng Kang Shi v. Connolly</u>, <u>supra</u>, 2007 WL 4380276 at *11 (when challenging jury instructions on habeas review, "the petitioner bears the burden of establishing a constitutional violation"). Without citing any authority, petitioner merely argues that his due process rights were violated because the Trial Judge refused to use the language in the CJI that defense counsel urged upon the trial court (Pet. <u>Pro</u> <u>Se</u> Br. at 25). This argument is wholly lacking in merit because the Trial Judge's charge was already complete on the issue of evaluating inconsistent testimony. Thus, the Trial Judge's refusal to include the language from the CJI did not so infect the trial as to result in a violation of petitioner's due process rights. <u>See</u> <u>Cheng Kang Shi v. Connolly</u>, <u>supra</u>, 2007 WL 4380276 at *11 (habeas

relief not warranted where state court refused to supplement a definition in its charge that was already accurate and complete under New York law); <u>Henry v. Ricks</u>, 01-CV-1361 (GLS)(DEP), 2007 WL 2406928 at *7 (N.D.N.Y. Aug. 21, 2007)(rejecting challenge to jury instruction on habeas review where "[p]etitioner . . . cited no authority tending to suggest that this evenly balanced charge, which comports with New York law regarding such matters effectively deprived him of any constitutional or federal statutory right")(citation omitted).

In sum, the Appellate Division's rejection of petitioner's claims relating to the Trial Judge's jury instructions was not contrary to or an unreasonable application of clearly established Supreme Court precedent.

### 4. Excessive Sentence

Petitioner claims that the sentence he received is both excessive and constitutes cruel and unusual punishment (Pet. <u>Pro Se</u> Br. at 31-33). Respondent argues that the excessive sentence claim is not cognizable on federal habeas review and that the cruel and unusual punishment claim is without merit (Resp. Mem. at 35-37).

A sentence violates the Eighth Amendment when the sentence is "grossly disproportionate" to the crime committed or when the sentence imposed "shocks the collective conscience of

society." <u>Kennedy v. Louisiana</u>, No. 07-343, 2008 WL 2511282 at
*9 (S.Ct. June 25, 2008); <u>Atkins v. Virginia</u>, 536 U.S. 304, 311
n.7 (2002); <u>United States v. Gonzalez</u>, 922 F.2d 1044, 1053 (2d
Cir. 1991); <u>see</u> <u>also</u> <u>Lockyer v. Andrade</u>, <u>supra</u>, 538 U.S. at 73;
<u>Harmelin v. Michigan</u>, 501 U.S. 957, 1001 (1991); <u>United States v.</u>
<u>Snype</u>, 441 F.3d 119, 152 (2d Cir. 2006); <u>United States v. Romano</u>,
825 F.2d 725, 731 (2d Cir. 1987); <u>Pressley v. Bennett</u>, 235 F.
Supp.2d 349, 368-69 (S.D.N.Y. 2003); <u>Calderon v. Keane</u>, 97 Civ.
2116 (RCC)(JCF), 2002 WL 1205745 at *14 (S.D.N.Y. Feb. 21, 2002)
(Report & Recommendation), <u>adopted</u>, 2003 WL 22097504 (S.D.N.Y.
Sept. 9, 2003); <u>Sutton v. Herbert</u>, 39 F. Supp.2d 335, 337
(S.D.N.Y. 1999); <u>see</u> <u>generally</u> <u>Ewing v. California</u>, 538 U.S. 11
(2003).

If petitioner is challenging the sentence imposed as an
abuse of the Trial Judge's discretion, he has failed to state a
cognizable constitutional claim.  A sentence within the range
established by state law, as the sentence here clearly was,[9] is
ordinarily not subject to an Eighth Amendment challenge.  <u>See</u>

---

[9]At the time of petitioner's offenses, New York classified
burglary in the second degree as a Class C felony.  N.Y. Penal L.
§ 70.02(1)(b).  Because petitioner was adjudicated a persistent
violent felony offender (S. 5-13), at the time of petitioner's
sentencing the permissible sentencing range was an indeterminate
term of, at a minimum, sixteen to twenty-five years and a maximum
of life.  N.Y. Penal L. § 70.08(2),(3)(b).  In addition,
petitioner faced a determinate term of up to one year
imprisonment for his conviction of possession of burglar's tools.
N.Y. Penal L. § 70.15(1).

White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992)(per curiam); Diaz v. Herbert, 317 F. Supp.2d 462, 479-80 (S.D.N.Y. 2004); Brown v. Goord, 02 Civ. 2122 (NRB), 2002 WL 31093611 at *5 (S.D.N.Y. Sept. 13, 2002); Espinal v. Barkely, 95 Civ. 1214 (HB), 1996 WL 673833 at *1 (S.D.N.Y. Nov. 20, 1996); Rodriguez v. O'Keefe, 96 Civ. 2094 (LLS), 1996 WL 428164 at *7 (S.D.N.Y. July 31, 1996), aff'd mem., 122 F.3d 1057 (2d Cir. 1997).

If petitioner is claiming that his sentence is so disproportionately long that it constitutes an Eighth Amendment violation, his claim fails. As stated by the Supreme Court, a habeas court will find that a state-law sentence is "grossly disproportionate" and violates the Eighth Amendment only "in the 'exceedingly rare' and 'extreme' case." Lockyer v. Andrade, supra, 538 U.S. at 73, quoting Harmelin v. Michigan, supra, 501 U.S. at 1001; accord Ewing v. California, supra, 538 U.S. at 21; United States v. Snype, supra, 441 F.3d at 152; Whitlatch v. Senkowski, 344 F. Supp.2d 898, 905-07 (W.D.N.Y. 2004); Vasquez v. Walker, 01 Civ. 8032 (AKH), 2004 WL 594646 at *5 (S.D.N.Y. Mar. 25, 2004); Ayala v. People, 03 Civ. 2762 (AKH), 2004 WL 527035 at *5 (S.D.N.Y. Mar. 16, 2004); Williams v. Philips, 02 Civ. 5811 (DC), 2003 WL 21961127 at *8 (S.D.N.Y. Aug. 18, 2003).

Petitioner's sentence here is entirely ordinary. Other courts have reviewed sentences of the range imposed upon petitioner for comparable offenses and have uniformly upheld such

48

sentences as not violating the Eighth Amendment.  E.g., Folk v.
Philips, 05-CV-557 (NGG), 2007 WL 4264577 at *7 (S.D.N.Y. Nov.
30, 2007)(sentence of twenty-five to life for persistent violent
felony offender convicted of robbery in the first degree did not
violate Eighth Amendment); Velez v. Duncan, 00 Civ. 6163
(BSJ)(RLE), 2005 WL 1221836 at *5-*6 (S.D.N.Y. May 13,
2005)(sentence of sixteen years to life for persistent violent
felony offender convicted of burglary in the second degree did
not violate Eighth Amendment)(Report & Recommendation); McKenzie
v. Poole, 03-CV-4253 (JG), 2004 WL 2671630 at *10 (E.D.N.Y. Nov.
23, 2004)(concurrent sentences of twenty-five years to life for
persistent violent felony offender convicted of assault in the
first degree and criminal possession of a weapon in the second
degree did not violate Eighth Amendment); Parks v. Perlman, 03 CV
805 (JG), 2004 WL 848177 at *4 (E.D.N.Y. Apr. 19 2004)(sentence
of four years to life for persistent violent felony offender
convicted of Class E felony did not violate Eighth Amendment);
Marsh v. Duncan, 01 CV 1314 (JG), 2004 WL 86412 at *9 (E.D.N.Y.
Jan. 7, 2004)(sentence of twenty years to life for persistent
violent felony offender convicted of burglary in the second
degree not excessive under Eighth Amendment); see generally Ewing
v. California, supra, 538 U.S. 11 (sentence of 25 years to life
imposed on recidivist for stealing three golf clubs not cruel and
unusual); Lockyer v. Andrade, supra, 538 U.S. 77 (sentence of 25

years to life for stealing $150 worth of videotapes not cruel and unusual).[10]  In light of these decisions, petitioner's sentence cannot be characterized as "grossly disproportionate" to the crimes for which he was convicted.

Accordingly, the Appellate Division's rejection of petitioner's challenges to his sentence was not contrary to or an unreasonable application of clearly established Supreme Court precedent.

### 5.  Prosecutorial Misconduct

Petitioner next claims that he was denied his right to a fair trial when the prosecutor (a) personalized his closing statement and (b) improperly vouched for Chen's credibility (Pet. Pro Se Br. at 30-31).[11]  Respondent argues that these comments were not improper and, in any event, not so egregious as to warrant habeas relief (Resp. Mem. at 33-35).

---

[10]In most of the cases from this Circuit cited in the text, the petitioner was sentenced after a 1995 amendment to New York Penal Law Section 70.08.  That amendment doubled the length of the mandatory minimum sentences for persistent violent felony offenders.  See 1995 N.Y. Laws 3.  Thus, even with the mandatory minimum sentences doubled, sentences imposed pursuant to Section 70.08 were still not violative of the Eighth Amendment.

[11]Although he also claims that the prosecutor made improper remarks throughout trial (Pet. Pro Se Br. at 30), petitioner does not provide any examples of such remarks and only cites to comments made during the prosecution's closing statement. Accordingly, I limit my analysis of this claim to the prosecutor's comments during summation.

A prosecutor's comments or argument during summation will justify habeas relief only when they "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 477 U.S. 168, 181 (1986); accord Greer v. Miller, 483 U.S. 756, 765 (1987)("To constitute a due process violation, the prosecutorial misconduct must be 'of sufficient significance to result in the denial of the defendant's right to a fair trial.'"), quoting United States v. Bagley, 473 U.S. 667, 676 (1985) quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974); Bossett v. Walker, 41 F.3d 825, 829 (2d Cir. 1994)("The appropriate standard of review for a claim of prosecutorial misconduct on a writ of habeas corpus 'is the narrow one of due process, and not the broad exercise of supervisory power.'"), quoting Floyd v. Meachum, 907 F.2d 347, 353 (2d Cir. 1990), quoting Darden v. Wainwright, supra, 477 U.S. at 181.

In order to justify federal habeas relief, a petitioner "must demonstrate that he suffered actual prejudice because the prosecutor's comments during summation had a substantial and injurious effect or influence in determining the jury's verdict. Habeas relief is not appropriate when there is merely a 'reasonable possibility' that trial error contributed to the verdict." Bentley v. Scully, 41 F.3d 818, 824 (2d Cir. 1994), quoting Brecht v. Abrahamson, 507 U.S. 619, 637 (1993); Escobar

51

v. Senkowski, 02 Civ. 8066 (LAK)(THK), 2005 WL 1307939 at *16 (S.D.N.Y. May 26, 2005)(same), quoting Tankleff v. Senkowski, 135 F.3d 235, 252 (2d Cir. 1998).

Courts in this Circuit have considered the following non-exhaustive factors in assessing whether prosecutorial misconduct during summation resulted in actual prejudice to a criminal defendant:  "(1) the severity of the prosecutor's conduct; (2) what steps, if any, the trial court may have taken to remedy any prejudice; and (3) whether the conviction was certain absent the prejudicial conduct." Bentley v. Scully, supra, 41 F.3d at 824, citing Gonzalez v. Sullivan, 934 F.2d 419, 424 (2d Cir. 1991); see also United States v. Millar, 79 F.3d 338, 343 (2d Cir. 1996); Floyd v. Meachum, supra, 907 F.2d at 355; United States v. Modica, 663 F.2d 1173, 1181 (2d Cir. 1981). With these standards in mind, I turn to the two specifications of petitioner's prosecutorial misconduct claim.

Petitioner first argues that the prosecutor improperly injected his personal opinion into his closing statement by repeatedly using phrases such as "I submit," "I suggest," and "I am asking" (Pet. Pro Se Br. at 30).  Petitioner specifically points to one passage near the close of the prosecutor's summation:

> You have played an essential role in the fact finding of this case, ladies and gentlemen and I submit you have given the defendant your time and all of the investment of effort that you can give.  Now it's time

> I suggest for justice to get what it deserves, and it
> deserves that when evidence is presented in this way
> and it shows that the defendant has actually broken the
> laws of this state, that the words of the indictment be
> far more than just words on a page and it deserves that
> that be reflected in your verdict and I am asking that
> you uphold the indictment, that you give a reasonable
> interpretation of this evidence by coming back here and
> through the voice of your foreperson returning a
> verdict of guilty on both counts of this indictment.

(Tr. 526-27)(emphasis added).

"It is strictly 'improper for a prosecutor to interject personal beliefs into a summation[.]'" United States v. Eltayib, 88 F.3d 157, 172 (2d Cir. 1996), quoting United States v. Nersesian, 824 F.2d 1294, 1328 (2d Cir. 1987); see also United States v. Young, 470 U.S. 1, 8 (1985); Reid v. Giambruno, 03-CV-0250 (VEB), 2007 WL 3232497 at *23 (W.D.N.Y. Oct. 31, 2007)("[I]t is improper for a prosecutor to . . . express his personal opinion concerning the merits of particular evidence[.]"). Moreover, the Second Circuit Court of Appeals has stated "that prosecutors should avoid 'frequent[] use [of] rhetorical statements punctuated with excessive use of the personal pronoun 'I,'" United States v. Rivera, 22 F.3d 430, 437 (2d Cir. 1994), quoting United States v. Nersesian, supra, 824 F.2d at 1328, because "it tends to make an issue of [the prosecutor's] own credibility, or to imply the existence of extraneous proof." United States v. Eltayib, supra, 88 F.3d at 172 (internal quotation marks omitted).

After a careful review of the entire summation, <u>United States v. Young</u>, <u>supra</u>, 470 U.S. at 12, I conclude that the prosecutor's use of phrases such as "I submit" and "I suggest" during summation was not improper. At least where the pronoun "I" is not used excessively, the Court of Appeals has squarely held that a prosecutor's use in summation of the phrases "I submit" or "I suggest" is not improper. <u>United States v. Eltayib</u>, <u>supra</u>, 88 F.3d at 173; <u>United States v. Jaswal</u>, 47 F.3d 539, 544 (2d Cir. 1995); <u>United States v. Modica</u>, <u>supra</u>, 663 F.2d at 1181; <u>see</u> <u>Collier v. United States</u>, 92 F. Supp.2d 99, 107 (N.D.N.Y. 2000)("Viewing the prosecutor's closing a whole, the Court finds that the occasional use of rhetorical phrases such as 'I submit' and 'I suggest' is simply fair argument . . . that does not rise to the level of prosecutorial misconduct" because "the [prosecutor] was properly arguing the evidence and was not referring to his personal beliefs or to any additional information he might have had")(internal quotation marks omitted).

Petitioner next argues that the prosecutor improperly vouched for the credibility of Chen on two occasions:

> [Chen] didn't have time to embellish his observations. He didn't have time to invent or make up a story. He was simply saying what you say and <u>I</u> <u>would</u> <u>submit</u> to you that his testimony had those same kind of marks of credibility. He simply came here and [told] you what he is able to remember from that day, which was quite a lot and he did see the profile of these people and <u>I</u> <u>submit</u> to you that that is enough . . . .

*     *     *

> Even sitting here looking at [petitioner's jacket], I bet we would all disagree as to that the description of that color is. Are we really to fault David Chen for not coming up with an exact or articulate description of the color as he is running down the street after these men? I suggest not.

> That's quite striking that even in his state [of] mind, he was able to draw that distinction and I think you should credit [Chen's] testimony for its accuracy.

(Tr. 515, 518)(emphasis added).

Again, a prosecutor's use of the phrase "I submit that" in arguing that a witness is credible is not improper where defense counsel has attacked the credibility of that witness during summation. United States v. Eltayib, supra, 88 F.3d at 173; see Morales v. Walsh, CV-05-2251 (DGT)(LSB), 2008 WL 2047632 at *7 (E.D.N.Y. May 12, 2008)(rejecting prosecutorial misconduct claim based on witness vouching because "it was appropriate for the prosecutor to make arguments regarding the credibility of her own witness" where "much of the defenses' summations were devoted to discrediting [the witness's] and his version of events[.]"); Natal v. Bennett, 98 Civ. 1872 (RWS), 1998 WL 841480 at *8 (S.D.N.Y. Dec. 3, 1998)(same).

The prosecutor's statement to the jury, "I think you should credit [Chen's] testimony for its accuracy," (Tr. at 518), is slightly more troubling. This argument was improper because it constituted the prosecutor's vouching for Chen's credibility. United States v. Nersesian, supra, 824 F.2d at 1328.

Nevertheless, "a prosecutor's use of the pronoun 'I' does not automatically wreck the case. . . . [E]ven though phrases such as 'I think it is clear,' or 'Does it makes sense -- I think it does,' are not 'acceptable,' they do not merit reversal unless 'the summation viewed as a whole . . . reflect[s] improper vouching.'" United States v. Eltayib, supra, 88 F.3d at 173, quoting United States v. Nersesian, supra, 824 F.2d at 1328. Petitioner has cited only this one instance in which the prosecutor used the condemned phrase in his summation, and the evidence of petitioner's guilt -- which included an eyewitness identification immediately after the burglary, petitioner's arrest in close proximity to a pouch containing burglar's tools and petitioner's actual possession of other burglar's tools (the shim cards around his neck (Tr. 299-300, 364, 374-78, 388, 392-94) -- was compelling. Under these circumstances, the prosecutor's single improper statement in summation does not rise to the level of a due process violation. See United States v. Castro, 00 Cr. 549 (LMM), 2003 WL 23518114 at *6 (S.D.N.Y. May 19, 2003); Torres v. Costello 97-CV-5480 (RR), 2001 WL 811924 at *10 (E.D.N.Y. June 1, 2001) (petitioner not denied due process where prosecutor occasionally used the phrase "I think" when referring to witness's testimony because "a review of the comments, in context, reveal[ed] that the prosecutor was

endeavoring to focus the jury's attention on the evidence presented and never on his own credibility . . . .").

Even assuming, _arguendo_, that the prosecutor's statements were improper, when viewed in the context of the defense argument that preceded them and given the mitigating factors set forth below, these comments individually and cumulatively did not substantially prejudice petitioner and, thus, do not warrant habeas relief. United States v. Modica, supra, 663 F.2d at 1181 ("A prosecutor's improper summation results in a denial of due process when the improper statements cause substantial prejudice to the defendant.").

First, the prosecutor's conduct was not severe. Although he objected to certain portions of the prosecutor's summation, defense counsel did not object to the comments petitioner challenges here. Moreover, the comments appear to have been made extemporaneously and not as part of a calculated plan to entice the jury to draw inferences not supported by evidence. United States v. Nersesian, supra, 824 F.2d at 1329. Further, they were isolated statements in a lengthy summation, Donnelly v. DeChristoforo, supra, 416 U.S. at 646 ("isolated passages" of prosecutor's argument, while improper, did not merit habeas relief); Escobar v. Senkowski, supra, 2005 WL 1307939 at *15 ("[A] prosecutor's improper comments during summation must be more than short and fleeting, but must instead be so numerous

and, in combination, so prejudicial that a new trial is required.")(internal quotation marks omitted), and were not nearly as numerous as the comments made in Nersesian (65 instances) or Modica (60 instances), cases in which the Court of Appeals found no substantial prejudice.

Second, the Trial Judge instructed the jury that only its recollection of the evidence controlled and that it could accept or reject counsel's arguments based on the logical connection between the arguments and the evidence in the record (Tr. 529-30, 531).  A jury is "presumed to follow their instructions[,]" Richardson v. Marsh, 481 U.S. 200, 211 (1987), and the record discloses no reason why this presumption should not apply here.  See Wicks v. Miller, 05 Civ. 5341 (JGK), 2007 WL 1434992 at *6 (S.D.N.Y. May 15, 2007)(jury not unduly influenced by prosecutor's comments concerning the evidence during opening statement where trial court instructed jury that only its recollection of the evidence controlled).

Third, the prosecution presented strong evidence of petitioner's guilt.  Immediately after Chen and Liou tried to enter Liou's apartment, Chen saw petitioner descend the fire escape of the apartment building and followed him until petitioner entered a taxicab.  About thirty minutes later, Chen identified petitioner as the man from the fire escape at a show-up.  From the back of the cab, the police recovered a pouch with

locking pliers, a file, needle-nosed pliers, two screwdrivers, and a large wood toothpick.  Several "shims" were also recovered from petitioner's person.  The strength of the evidence against petitioner implies that the prosecutor's comments had no material effect.

Accordingly, the Appellate Division's decision that the prosecutor's comments during summation did not deprive petitioner of his due process right to a fair trial is not contrary to or an unreasonable application of clearly established Supreme Court precedent.

### 6.  Ineffective Assistance

Lastly, petitioner claims that trial counsel was ineffective for failing to (a) request that the Trial Judge provide instructions to the prospective and sworn-in jurors the first eight times they exited the courtroom, (b) object to the prosecutor's personalizing his closing statement, (c) object to the prosecutor's improper vouching for Chen's credibility, and (d) challenge for cause a prospective juror who was a sheriff's deputy (Pet. Pro Se Br. at 28-30).

In order to prevail on a claim of ineffective assistance of trial counsel, a habeas petitioner must meet the now familiar two-part test set forth in Strickland v. Washington, 466 U.S. 668, 686-87 (1984):

> The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.
>
> . . . .
>
> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction . . . has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as "counsel" guaranteed by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

Accord United States v. Abad, 514 F.3d 271, 275 (2d Cir. 2008);

Campusano v. United States, 442 F.3d 770, 773 (2d Cir. 2006);

Davis v. Greiner, 428 F.3d 81, 87 (2d Cir. 2005); Greiner v. Wells, 417 F.3d 305, 319 (2d Cir. 2005), cert. denied, 546 U.S. 1184 (2006); Aeid v. Bennett, 296 F.3d 58, 62-63 (2d Cir. 2002);

Hernandez v. United States, 202 F.3d 486, 488 (2d Cir. 2000);

Guerrero v. United States, 186 F.3d 275, 281-82 (2d Cir. 1999);

McKee v. United States, 167 F.3d 103, 106-07 (2d Cir. 1999);

Jackson v. Leonardo, 162 F.3d 81, 85 (2d Cir. 1998).

In determining whether counsel's performance was objectively deficient, courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable

professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Strickland v. Washington, supra, 466 U.S. at 689 (internal quotation marks omitted).

The second prong of the test -- actual prejudice -- requires the petitioner to show that, but for trial counsel's errors, there is a "reasonable probability" that the result of the trial would have been different. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland v. Washington, supra, 466 U.S. at 694.

Because the test is conjunctive, a habeas petitioner's failure to satisfy either prong requires that the challenge to the conviction be rejected. Strickland v. Washington, supra, 466 U.S. at 697.

Petitioner's first three grounds are easily disposed of. As discussed supra pages 39-40 and 52-56, the Trial Judge's failure to give instructions to the prospective and sworn-in juror before they exited the courtroom was not error and the prosecutor did not improperly inject his personal beliefs into summation or improperly vouch for Chen's credibility. Thus, a request for such instructions and objections to these comments would have been meritless and a failure to make meritless objections does not constitute ineffective assistance. United

States v. Arena, 180 F.3d 380, 396 (2d Cir. 1999)("Failure to make a meritless argument does not amount to ineffective assistance."); see also United States v. Kirsh, 54 F.3d 1062, 1071 (2d Cir. 1995)("[T]he failure to make a meritless argument does not rise to the level of ineffective assistance"); Duncan v. Griener, 97 Civ. 8754 (JGK), 1999 WL 20890 at *10 (S.D.N.Y. Jan. 19, 1999)(since trial counsel's objection would have been fruitless, "the failure to so object is not evidence of ineffective assistance of counsel"); Perez v. United States, 89 CR 800 (RPP), 96 Civ. 7702 (RPP), 1997 WL 661426 at *4 (S.D.N.Y. Oct. 23, 1997)("Defense counsel's failure to object, then, cannot have resulted in actual prejudice to petitioner, as the objection would have been meritless.").

Even if the prosecutor's comments had been objectionable, petitioner's ineffective assistance claim would still fail.  Trial counsel objected to the prosecutor's summation on six other occasions (Tr. 513, 522, 524, 525, 526), suggesting that his failure to object to the comments petitioner now challenges was driven by trial strategy that fell within the "wide range of professionally competent assistance."  See Strickland v. Washington, supra, 466 U.S. at 690; see also Nova v. Ercole, 06 Civ. 562 (NRB), 2007 WL 1280635 at *8 (S.D.N.Y. Apr. 30, 2007)(failure to object to prosecutor's vouching for witness during summation not objectively unreasonable in light of

defense counsel's objections to other portions of prosecutor's summation).  Moreover, petitioner fails to show that there is a "reasonable probability" that but for trial counsel's failure to object to these statements "the result of the proceedings would have been different." Strickland v. Washington, supra, 466 U.S. at 694.  As discussed above, these statements were isolated and fleeting portions of a long summation that certainly did not change the result of petitioner's trial in light of the strong case against him.

        Lastly, petitioner's claim that he was denied effective assistance by trial counsel's failure to challenge for cause a prospective juror who was a sheriff's deputy is without merit. First, trial counsel's decision not to challenge the prospective juror was not objectively unreasonable because this decision fell within the "wide range of reasonable professional assistance[.]" Strickland v. Washington, supra, 466 U.S. at 689.  "An attorney's actions during voir dire are considered to be matters of trial strategy." Hughes v. United States, 258 F.3d 453, 457 (6th Cir. 2001); see also Nova v. Ercole, supra, 2007 WL 1280635 at *8 ("Trial counsel's decision not to move to dismiss for cause clearly falls within the wide range of professionally competent assistance.")(internal quotations omitted).  Indeed, trial counsel is "accorded particular deference when conducting voir dire[.]" Hughes v. United States, supra, 258 F.3d at 457.  In

this case, counsel successfully challenged for cause six other prospective jurors who expressed concerns about their ability to be impartial (Tr. 82-84, 180-82, 184, 214-15). Counsel's challenge to these prospective jurors "suggests that counsel deliberately chose not to challenge [the sheriff's deputy] as part of trial strategy that 'might be considered sound.'" Nova v. Ercole, supra, 2007 WL 1280635 at *8, quoting Strickland v. Washington, supra, 466 U.S. at 690.

Even assuming, arguendo, that counsel's failure to challenge the sheriff's deputy was objectively unreasonable, petitioner fails to establish that this juror was actually biased against him. Mitchell v. Herbert, 01-CV-681 (RJA)(VEB), 2008 WL 342975 at *21 (W.D.N.Y. Feb. 6, 2008)(a showing of actual bias is sufficient to satisfy prejudice prong of Strickland). The test for determining juror bias is well-established:

> To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.

Irvin v. Dowd, 366 U.S. 717, 723 (1961); see also Hughes v. United States, supra, 258 F.3d at 458 ("The Supreme Court has upheld the impaneling of jurors who had doubted, or even disclaimed outright, their own impartiality on voir dire."). Where, as here, a petitioner asserts a claim of ineffective

assistance based on trial counsel's failure to challenge a prospective juror during voir dire, petitioner must show that the prospective juror was actually biased against him or her.  Murphy v. Florida, 421 U.S. 794, 800 (1975); Hughes v. United States, supra, 258 F.3d at 458; Nova v. Ercole, supra, 2007 WL 1280635 at *8 ("[T]o prove juror impartiality, petitioner must prove actual bias.").  "Actual bias is 'bias in fact' -- the existence of a state of mind that leads to an inference that the person will not act with entire impartiality."  United States v. Torres, 128 F.3d 38, 43 (2d Cir. 1997).  Actual bias can be found where the prospective juror directly admits partiality or where such bias can be inferred from his or her answers to voir dire questions.  United States v. Torres, supra, 128 F.3d at 43.

Upon examining the voir dire transcript, I conclude that the sheriff's deputy was not actually biased against petitioner.  He did not directly admit to being partial and his voir dire testimony does not compel an inference that he was actually biased.  After the prospective juror stated that he was a sheriff's deputy, the Trial Judge inquired into whether he could set aside his professional experiences and judge the case on its merits.  He responded, "Yes" (Tr. 37).  The Trial Judge was entitled to credit this response.  See Hughes v. United States, supra, 258 F.3d at 459-60 ("A district court may rely upon juror assurances of impartiality in deciding whether a

[petitioner] has satisfied his burden of proving actual prejudice."). Morever, he assured defense counsel that he did not harbor any partiality toward the prosecution given his profession (Tr. 66-67). Lastly, throughout <u>voir</u> <u>dire</u>, the Trial Judge thoroughly examined each potential juror's ability to be impartial and excused many of them for cause (<u>e</u>.<u>g</u>., Tr. 27-29). Thus, the fact that the Trial Judge did not excuse the sheriff's deputy supports the conclusion that he was not actually biased. <u>See</u> <u>Wainwright v. Witt</u>, 469 U.S. 412, 428 (1985)(trial judge's determination concerning bias is accorded broad deference because "such a finding is based upon determinations of demeanor and credibility that are peculiarly within a trial judge's province").

Accordingly, the Appellate Division's rejection of petitioner's claim of ineffective assistance of trial counsel is not contrary to or an unreasonable application of clearly established Supreme Court precedent.

IV. <u>Conclusion</u>

For the foregoing reasons, I respectfully recommend that the petition be denied in its entirety.

In addition, since petitioner has not made a substantial showing of the denial of a constitutional right, I also recommend that a certificate of appealability not be issued.

66

28 U.S.C. § 2253.  To warrant the issuance of certificate of appealability, "petitioner must show that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." <u>Middleton v. Attorneys Gen.</u>, 396 F.3d 207, 209 (2d Cir. 2005)(<u>per curiam</u>) (internal quotation marks omitted); <u>see</u> <u>also</u> <u>Love v. McCray</u>, 413 F.3d 192, 195 (2d Cir. 2005)(<u>per curiam</u>).  For the reasons set forth above, I conclude that there would be no difference of opinion among reasonable jurists that the petition should have been reviewed in a different manner or that petitioner should be encouraged to proceed further.

## V.  <u>Objections</u>

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from the date of this Report and Recommendation to file written objections.  <u>See</u> <u>also</u> Fed.R.Civ.P. 6(a) and 6(d). Such objections (and responses thereto) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Deborah A. Batts, United States District Judge, 500 Pearl Street, Room 2510, New York, New York 10007, and to the chambers of the undersigned, 500 Pearl Street, Room 750, New York, New York 10007.  Any requests for an

extension of time for filing objections must be directed to Judge Batts. FAILURE TO OBJECT WITHIN TEN (10) DAYS **WILL** RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>IUE AFL-CIO Pension Fund v. Herrmann</u>, 9 F.3d 1049, 1054 (2d Cir. 1993); <u>Frank v. Johnson</u>, 968 F.2d 298, 300

(2d Cir. 1992); <u>Wesolek v. Canadair Ltd.</u>, 838 F.2d 55, 57-59 (2d Cir. 1988); <u>McCarthy v. Manson</u>, 714 F.2d 234, 237-38 (2d Cir. 1983).

Dated:  New York, New York
        June 30, 2008

                              Respectfully submitted,

                              _____
                              HENRY PITMAN
                              United States Magistrate Judge


Copies mailed to:

Mr. Fred Charlemagne
01-A-3778
Sing Sing Correctional Facility
354 Hunter Street
Ossining, New York   10562

Ashlyn H. Dannelly, Esq.
New York State Office of the
     Attorney General
120 Broadway
New York, New York   10271